AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of *(Briefly describe the property to be seized)* REGIONS BANK ACCOUNT – 141858751; STYLED DON WESTERN SKY, LLC OR DONOVAN BARKER; REGIONS BANK ACCOUNT – 141858948; STYLED QUANTUM INFORMATION TECHNOLOGIES, OR DONOVAN BARKER; AND REGIONS BANK ACCOUNT – 4302736926; STYLED QUANTUM INFORMATION TECHNOLOGIES, OR DONOVAN BARKER | ) ) ) ) ) ) ) Case No. 16-mj-45 ) ) ) ) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property is subject to forfeiture to the United States of America pursuant to 21 U.S.C. §§ 853 & 881 and 18 U.S.C. §§ 982(a)(1) & 981(a)(1)(A), and subject to seizure pursuant to 18 U.S.C. § 981(b) & 21 U.S.C. § 853(f). *(describe the property)*:

Regions Bank Account – 141858751; Styled Don Western Sky, LLC or Donovan Barker; Regions Bank Account – 141858948; Styled Quantum Information Technologies, or Donovan Barker; and Regions Bank Account – 4302736926; Styled Quantum Information Technologies, or Donovan Barker.

The application is based on these facts: See the attached Affidavit of Andre Guilott

☒ Continued on the attached sheet.

_____
*Applicant's signature*

Andre Guilott, Internal Revenue Service
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 20 , 2016

_____
*Judge's signature*

Erin Wilder-Doomes, United States Magistrate Judge
_____
*Printed name and title*

City and state:   Baton Rouge, Louisiana

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally came and appeared Special Agent Andre Guilott of the Internal Revenue Service, Criminal Investigation Division (IRS-CI), who, after being duly sworn, stated the following information which he acknowledges as true to the best of his knowledge and belief:

## AFFIANT'S BACKGROUND

Your affiant, Andre Guilott, is a Special Agent (SA) with the Internal Revenue Service-Criminal Investigation. I have been employed as an agent since 2001. From June 2011 to present, I have been assigned to the Baton Rouge, Louisiana Resident Office of the Drug Enforcement Administration (DEA). At DEA, I am assigned to work with the High Intensity Drug Trafficking Area squad (HIDTA) in Baton Rouge, Louisiana. As a HIDTA agent, I am assigned to investigate violations of money laundering and federal narcotics laws. Additionally, my role includes the seizure and forfeiture of assets related to money laundering and narcotics trafficking. During my fifteen years of experience in law enforcement, I have participated in and conducted numerous investigations involving criminal tax violations, fraud, and money laundering. Also, I have been the affiant in applications for the authority to conduct searches and make seizures of evidence of crime, contraband, the fruits, instrumentalities, and property used in committing crime, and other items illegally possessed.

Moreover, I have participated in numerous debriefings of witnesses and defendants. In the current case, your affiant has been assigned since December 2015 to the investigation of Operation Boo-Ray, specifically the financial activities of Donavan Barker, Jann Barker, Malcom Adams and others.

Any facts and information mentioned in this Affidavit are familiar to me either through direct participation in the criminal investigation of Barker and Adams, my review of interviews and records related to this investigation and prosecution, or from information obtained from discussions with DEA agents and meetings and conversations with the attorneys prosecuting the case, and from search and seizure warrants executed locally and around the country.

This affidavit does not represent each and every fact known to me. I have included only those facts necessary to establish probable cause to seize the funds in the bank accounts outlined below.

## PROPERTY TO BE SEIZED

1. This Affidavit is made in support of an Application for a Seizure Warrant to seize the funds in the following accounts:

   a. Capital One Bank Account – 2082550855; styled The Logo Wiz LLC, or Jann Barker

   b. Capital One Bank Account – 2082551126; styled Quantum Information Technologies, or Donovan Barker

   c. Capital One Bank Account – 5630301558; styled Jann Barker

   d. Capital One Bank Account – 5626378767; styled Donovan and Jann Barker

   e. Capital One Bank Account – 2082626967; styled Live Longer 110 LLC, or Malcolm Adams.

   f. Regions Bank Account – 141858751; styled Don Western Sky, LLC or Donovan Barker

   g. Regions Bank Account – 141858948; styled Quantum Information Technologies, or Donovan Barker

    h.  Regions Bank Account – 4302736926; styled Quantum Information Technologies, or Donovan Barker

    i.  Baton Rouge TELCO Federal Credit Union Account – 1046189; styled QI Technologies LLC, or Donovan Barker

The funds in these accounts will hereinafter be referred to as "**THE ACCOUNTS**".

## AUTHORITY FOR SEIZURE

2.  Donovan Barker, Jann Barker and Malcom Adams are being investigated for conspiracy to distribute and possess with the intent to distribute Schedule IV narcotics, Distribution of Schedule IV narcotics, and money laundering offenses. **THE ACCOUNTS** the United States seeks to seize can be seized under two theories: as "proceeds" of drug-trafficking and as property "involved in" money laundering.

3.  As "proceeds," **THE ACCOUNTS** can be forfeited pursuant to 21 U.S.C. § 853, which provides that a person convicted of a violation of this subchapter or subchapter II of this chapter shall forfeit to the United States—

> (a)(1) any property constituting, or derived from, and proceeds the person obtained, directly or indirectly, as a result of such violation.

and pursuant to 21 U.S.C. § 881—

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance …

**THE ACCOUNTS** can also be forfeited as property "involved in" money laundering.

The authority can be found in 18 U.S.C. § 982(a)(1), which provides that—

> the court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 or 1960 of the title, shall order

that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

4. **THE ACCOUNTS** can also be forfeited pursuant to 18 U.S.C. § 981(a)(1)which provides for the forfeiture of—

> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property

5. The seizure of **THE ACCOUNTS**, is authorized by 21 U.S.C. § 853 **Criminal forfeiture (f) Warrant of seizure**, which provides in pertinent part—

> the Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

6. 21 U.S.C.§ 853(l) **Jurisdiction to enter orders,** provides—

> The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

7. The seizure of **THE ACCOUNTS** can also be found in 18 U.S.C. § 981(b) which provides—

> (2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure …
> (3) notwithstanding the provisions of rule 41(a) of the federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found …

8. Based on the legislative history, the courts have held unanimously that the term property "involved" should be read broadly to include money or other property being laundered, any commissions and fees paid to the money launderer, and any property used to facilitate the money laundering offense. *United States v. Puche*, 350 F.3d 1137, 1154 (11th Cir. 2003).

9. "A person violates section 1956 if he (1) engages in a "financial transaction," that (2) "involves the proceeds of specified unlawful activity," and (3) either engages in the transaction to "promote" further acts of specified unlawful activity or with knowledge of a design to conceal the nature, ownership, or control of the funds being laundered. 18 U.S.C. §§ 1956(a)(1)(A)(i) & (B)(i). *United States v. Huber*, 404 F.3d 1047, 1057 (8th Cir. 2005)

## BACKGROUND OF THE INVESTIGATION

10. Agents of the DEA Baton Rouge Regional Office, United States Postal Investigative Service (USPIS) and Internal Revenue Service (IRS)  have been conducting an investigation of the pharmaceutical drug trafficking and money laundering of the Donovan Barker Jr. (BARKER), Jann Barker and Malcolm Adams Jr. (ADAMS) Organization.  This investigation has identified Jann Barker, BARKER and ADAMS as members in a large scale international pharmaceutical drug-trafficking and money laundering organization.   The members of the organization have established several corporations for the sole purpose of masking their drug trafficking and money laundering operation.   The investigation to date has revealed that the organization is shipping large quantities of pharmaceutical pills into the United States from India via postal packages.  These packages are then

being sent to re-shipping accounts in the United States and then re-shipped to individuals throughout the United States who are responsible for fulfilling individual customer orders. These individuals receive emails from known and unknown subjects believed to be in India with a customer list and labels. The subject then places the proper amount of pills in the package and prints the labels from their computer and places the package in the mail for distribution. The investigation to date as outlined below revealed Donovan BARKER'S Endicia account has paid the postage and created the labels for these packages used for distribution. In addition the investigation has revealed that the customers are paying for their orders either by Cash on Delivery (COD), or by credit card. The investigation to date as outlined below has identified several companies created by Jann BARKER, Donovan BARKER and Malcom ADAMS that facilitate the laundering of the monies derived from the sale of the pharmaceutical pills through COD payments and credit cards.

11. Since 2013, agents have been investigating the international internet pharmaceutical drug trafficking and money laundering organization involving BARKER, Jann Barker, ADAMS and others known and unknown. (Unless otherwise noted, when your affiant refers to BARKER he is referring to Donovan BARKER.) During the investigation, agents learned that BARKER, Jann Barker and ADAMS are responsible for facilitating the distribution of scheduled pharmaceutical drugs throughout the United States as well as laundering the monies derived from their illicit sales.

12.   During the course of this investigation, your affiant has learned the identity and roles of certain members of the organization and basic operation of its drug distribution through physical seizures, open source searches, subpoenas, and interviews with cooperating witnesses and other law enforcement officers.   In addition, your affiant has identified the BARKER and ADAMS' residences as locations being used to facilitate their drug trafficking organization, as well as numerous corporations and bank accounts used to assist in this operation.

13.   In January 2013, investigators intercepted a set of suspicious packages enroute to the BARKER residence located at 2284 Ferndale Avenue, Baton Rouge, Louisiana, the address of Donovan BARKER.   The package contained tramadol hydrochloride (Tramadol) and carisprodol (Soma), a Schedule IV controlled substance.   Tramadol was later designated on July 2, 2014 as a Schedule IV controlled substance. Investigators initiated surveillance on the BARKER residence and followed BARKER and his wife Jann Barker to the Office Depot parking lot wherein investigators made contact with BARKER.   Investigators and BARKER returned to BARKER'S residence wherein BARKER cooperated with investigators and explained his role in the international pharmaceutical drug trafficking organization.

14.   BARKER advised that he had responded to an internet spam email about making money fast.   BARKER learned that his role would be to accept large quantities of pharmaceuticals, including carisoprodol (Soma), from a male from India, named Rajiv Khera.   BARKER advised he started receiving shipments of the pharmaceutical drugs at his residence.   BARKER advised he would receive shipments of drugs with instructions, and a list of names and addresses directing

him as to which drugs and in what amounts to ship to the various customers on the list. He would then break the shipments down to individual packages, then ship the individual packages to customers at the direction of KHERA. BARKER advised that all contact with KHERA was done via email or via phone and that BARKER has never met KHERA in person. BARKER advised that he was receiving income and expense money from KHERA, via wire transfers into BARKER'S personal bank account.

15. BARKER provided investigators with numerous copies of emails from his computer between himself and KHERA. The emails consisted of customer lists, financial transactions and conversations between BARKER and KHERA. These emails appear to be between BARKER and KHERA in August 2012. The following are examples of the email exchanges between BARKER and KHERA.

> On Monday, October 1, 2012, at 3:24 PM, Rajiv KHERA (Khera) (Rajiv.khera7@gmail.com) sent an email to Donovan BARKER with the email subject listed as: RE: Mailing List. The body of the email stated "you can do that bud, I'll help you so that you can make good money, I promise.. you can trust me. I will wire you funds soon. Try to send the mails today and update me. Thanks, Rajiv". BARKER replied to KHERA email on the same date at 7:51 PM. The email stated "I'll try not to use my home address on this if possible. I'll send photos to you before I put them in the mail. I'll send first class postage. I'd like to make $5-6,000 this month. Do you think that's possible? I'll go to open a Chase Checking acct today and will forward that info to you. I may ask that you forward me $1-2,000 for me in the next few days and you can deduct from my commission. Thanks Don".

> On Monday, October 1, 2012, at 3:56 PM, Rajiv KHERA (Khera) (Rajiv.khera7@gmail.com) sent an email to Donovan BARKER with the email subject listed as: RE: Mailing List. The body of the email stated "I suggest first incorporate a LLC and then open bank account in the name of that company, so that we can set up a merchant account also. BARKER replied on Tuesday, October 2, 2012 at 2:21 AM. The body of the email stated "My secretary

knew how to cut/paste the address on to labels and she showed me how I can print address labels for our customers quickly. I will go to post office to get them all metered. I'll scan a copy of the Postage receipt and forward to you tomorrow. I have not had a chance to get my checking acct set up today so I will get that done tomorrow AM and forward to you for your file. Have a great day, DON".

16. The emails detail BARKER'S plan to incorporate several business names for shipping the pharmaceutical drugs, such as Caring Partners 1 LLC, and Don Western Sky LLC. The emails also outline KHERA's direction to BARKER as to opening up bank accounts to deposit the monies derived from the sale of the drugs. KHERA also requested access to these accounts via the internet in order to manage the accounts from his location. Furthermore, these emails contained customer information such as amount billed to the customers credit cards.

17. During the interview BARKER advised that he was storing additional quantities of pharmaceutical drugs at his residence and turned them over to investigators. BARKER advised his intention was to mail these drugs throughout the United States at the behest of KHERA. Jann Barker advised she knew her husband had gotten involved with some business venture on the internet, but did not know he was shipping pharmaceutical drugs. BARKER was not arrested at the time; however, he was advised that his activities were in fact against the law and he was to cease anymore involvement in the criminal enterprise. BARKER continued his cooperation with investigators and alerted them to an additional package that arrived at BARKER'S residence approximately three weeks later. Investigators went to BARKER'S residence and retrieved said package. As a result of the above described activities investigators seized approximately 86,000 dosage units of

pharmaceutical drugs, including carisoprodol, also known as Soma, a Schedule IV controlled substance, directly associated with BARKER and BARKER'S residence.

18.   BARKER has not contacted investigators since January 2013; however, our investigation has shown that BARKER continues to distribute and facilitate the interstate distribution of scheduled pharmaceutical drugs and to launder the drug proceeds.   To assist him in this endeavor, he has recruited Malcolm Adams (ADAMS) into the drug trafficking organization as well as his wife, Jann Barker. BARKER has continued on with the requests of KHERA and has created multiple business entities and opened multiple bank accounts in the names of these entities in an attempt to disguise the true nature of their businesses.   Between 2013 and 2015, BARKER'S suspicious banking activities have caused three financial institutions to terminate their banking relationships with BARKER and BARKER'S businesses. These institutions terminated their relationship due to BARKER'S irregular banking operations that were not consistent with BARKER'S alleged legitimate business.

19.   Our investigation to date has revealed that Jann Barker, BARKER and ADAMS are continuing to assist in the distribution of these scheduled pharmaceutical drugs throughout the United States and to launder these drug proceeds by currently utilizing Quantum Information Technologies LLC, Best 1 LLC, Live Longer 110 LLC, The Logo Wiz LLC, and other companies known and unknown to investigators.   Quantum Information Technologies LLC was registered on May 30, 2014, with the Louisiana Secretary of State.   The Registered Agent is Donovan J. Barker Jr., at 2284 Ferndale Ave, Baton Rouge, Louisiana.   The Louisiana Secretary of State records do not indicate Best 1 LLC has been incorporated.

However, research disclosed BARKER filed an Assumed Name Certification at the East Baton Rouge Parish Clerk of Court for Best 1 LLC. This certificate enables BARKER to conduct business for Quantum Information Technologies LLC under the assumed name of Best 1 LLC. In short, Quantum Information Technologies LLC is doing business as Best 1 LLC. BARKER signed and printed his name on the certification on April 22, 2015, and the certification was then notarized. Live Longer 110 LLC was registered on October 7, 2013, with the Louisiana Secretary of State. The listed officer is Malcolm Adams Jr., at 1912 Glenmore Ave, Baton Rouge, Louisiana. The Logo Wiz LLC was registered on October 5, 2015, with the Louisiana Secretary of State. The listed officer of this corporation is Jann Pace-Barker, at 2284 Ferndale Avenue, Baton Rouge, Louisiana. All of the above businesses, according to the Louisiana Secretary of State website, are currently active and in good standing.

20. On April 27, 2016, bank officials with JP Morgan Chase Bank informed investigators that they were suspicious of BARKER's banking activities, which they found to be inconsistent with his previous assertion he made to them that he was in the vitamin and supplements business. BARKER, in addition to receiving electronic ACH deposits, was making frequent deposits of large amounts of cash or monetary instruments (money orders), which JP Morgan Chase officials felt was unusual for a non-cash intensive business. Additionally, just as frequently as he made deposits, BARKER conducted outgoing wire transfers to numerous third parties both domestic and foreign. As a result of those suspicions, JP Morgan Chase Bank

closed the bank accounts BARKER held in the names of Don Western Sky LLC, and Caring Partners 1 LLC.

21. In February 2016, after United States Postal Inspectors examined the outside of priority mail packages that were being returned to BARKER'S residence, they learned that BARKER had opened an Endicia account on July 30, 2014. Endicia is a company that allows people to print labels and postage from their own computer. The account was established by BARKER, and BARKER listed Quantum Information Technologies, at 2284 Ferndale, Baton Rouge, Louisiana, which is his residence, as the business on the account. BARKER furnished Endicia with his email address as GZEROHEALTH1@gmail.com. This account is still active and as of April 5, 2016, has printed over 13,000 labels for postal packages, at a cost of approximately $138,107.00. Some of the packages the United States Postal Inspectors examined were COD packages that were either being returned for non-payment or were undeliverable. The return COD and return address for the undeliverable packages was Quantum Information Technologies, at 2284 Ferndale, Baton Rouge, Louisiana. Further investigation into the Endicia account number being used on these returned packages revealed that they were printed using BARKER's Endicia account.    It should be noted that there are many priority mail packages, similar to those described above, that are still sitting at the Post Office waiting for BARKER to pick them up, and they are all consistent with the weight, return address, and postage cost of packages seized throughout this investigation, all of which contain scheduled pharmaceutical drugs. Based on your affiant's training and experience it is believed that those packages sitting at the Post Office to be

picked up by BARKER likewise contain scheduled pharmaceutical drugs that were unable to be delivered.  According to the U.S. Postal Service, if the intended recipient is not available to take physical custody of priority mail, a notice is left at the mailbox that an attempt was made at delivery.

22.  In March of 2015, investigators learned of an account BARKER had with USABOX.Com, which is located in Miami, Florida.  USABOX.Com is a re-shipping business that allows customers to set up accounts and receive mail at this location to be forwarded anywhere the client desires via the internet.  The investigation revealed that in June of 2014, BARKER established account #50032 with USABOX.Com in Miami, Florida.  BARKER listed Best 1 LLC and Quantum Information Technologies as the corporations associated with the account, with BARKER'S home address as its business address.  BARKER listed Best 1 LLC and Quantum Information Technologies as Green Tea Extract and Herbal Supplement type businesses. BARKER set up his email address with USABOX.com as Care.partners1@gmail.com, in the event it had to contact him.  It should be noted that the application for the account was signed by BARKER and was notarized.

23.  Investigators spoke with Carlos Dominguez, the manager of USABOX.com in Miami, Florida, who advised that BARKER'S account frequently received two types of mail, U.S Postal Priority packages and, in Dominguez's experience, what appeared to him to be U.S. Postal Money Orders.  Mr. Dominguez advised investigators that the priority packages had Best 1 LLC, a corporation associated with BARKER, listed as the return address to his account at USABOX.Com. According to Dominguez, those priority mail packages were frequently returned

because those packages were not claimed by the intended recipient or the COD had not been paid. The items Dominguez believed to be U.S. Postal Money Orders had a return address of Best 1 LLC. On March 9, 2016, Dominguez acting under company policy and on his own initiative opened one of the packages being returned to BARKER'S account while in the presence of investigators. The package contained approximately 180 dosage units of suspected Tramadol. Those units bore markings unique to this controlled substance which led those agents to believe that the dosage units were Tramadol. Mr. Dominguez noted that the returned package labels bore BARKER'S Endicia account printed on the outside of the envelopes. Mr. Dominguez advised that BARKER'S account communicates with USABOX.com via the internet and can't recall ever talking on the phone with BARKER. He advised that USABOX.com, on or about April 25, 2016, attempted to notify BARKER via email that USABOX.com had turned over items in BARKER'S account to agents of the Drug Enforcement Administration in the Miami Filed Division. Dominguez further advised investigators that despite that, BARKER'S account was renewed for another month on May 1, 2016, and is currently still active. Dominguez advised that BARKER was still receiving what appeared to be U.S. Postal Money Orders in his account as recently as April 28, 2016, addressed to Best 1 LLC, and in fact he stated that he received instructions via the internet from BARKER'S account to have approximately 27 parcels of suspected U.S. Postal Money Orders shipped to the BARKER residence on April 12, 2016.

24. Mr. Dominguez advised that BARKER, following earlier practices, provided USABOX.Com with new addresses for these last packages, which were returned either because they were not claimed by the intended recipient or because the COD had not been paid, to be re-shipped. As in earlier instances, Dominguez inserted the original package into a new package, and mailed it to a new customer, as directed by BARKER'S account. Investigators were able to intercept nine of those repackaged items, each containing approximately 180 dosage units of Tramadol, a Schedule IV controlled substance, to their new shipping destinations. On or about March 14, 16, and 22, 2016, investigators conducted controlled deliveries and thereafter interviewed the recipients of those packages. Those individuals provided similar versions to investigators. In most occasions, they first ordered Tramadol online at a web-site that most couldn't recall. Once they placed the order, they would routinely receive phone calls from a customer service center attempting to re-fill their orders. Customers indicated that throughout 2015 and continuing into 2016, they were called on a weekly and monthly basis to refill their orders. Six of the customers who used credit cards to place their orders advised that a corporation by the name of Live Longer 110 LLC, which is a business created by and registered to ADAMS, appeared on their credit cards as the business that was collecting the payment. All of the above interviews and controlled seizures of Tramadol conducted on March 14, 16, and 22, 2016, were paid for by the customers using credit cards, and whose cards showed charges by Live Longer 110 LLC. It should be noted that some of the packages that were repackaged and re-shipped by Dominguez, were originally destined to customers who would have sent their COD payments for the Tramadol to

Best 1 LLC in Miami, Florida.  In one instance, a customer who advised they frequently purchased Tramadol, but could not recall what charges appeared on their credit card statement, provided investigators with the credit card number he/she used to make the purchases of Tramadol.  Investigators were able to match the customer's credit card number to a TSYS Merchant Solutions account, which is a credit card processing company the organization used.  The account was registered to The Logo Wiz LLC, a business registered to Jann Barker at her residence located at 2284 Ferndale, Baton Rouge, Louisiana.  A credit card processor is a company (often a third party) appointed by a merchant to handle transactions from various channels such as credit cards and debit cards for merchant acquiring banks.  An analysis of the TSYS Merchant Solutions credit card transactions for The Logo Wiz LLC, showed three transactions totaling $1,230.00 from this one customer's credit card.  These credit card payments, processed by TSYS Merchant Solutions, were deposited into a bank account held by the Logo Wiz, LLC.

25. Based upon your Affiants training and experience your Affiant believes that the large amounts of United States Postal Money Orders arriving at BARKER'S USA.BOX.Com account, addressed to Best 1 LLC, were then ultimately directed back to BARKER'S residence at BARKER'S direction.  These money orders were the result of the sale of controlled substances wherein customers were paying COD for their orders.  This fact is buttressed not only by the controlled deliveries outlined above, but also by analysis of Quantum Information Technologies' Regions bank accounts.  As noted above, Quantum Information Technologies is doing business as Best 1 LLC under the Louisiana Secretary of State filing of BARKER.  A review of

the Quantum Information Technologies Regions bank account 141858948 between June 8, 2015, and January 29, 2016, shows a total of $134,196.00 in deposits from Money Orders.    A review of Quantum Information Technologies Regions bank account 4302736926 between April 1, 2015 and May 29, 2015, shows a total of more than $16,000 in deposits from Money Orders.  A review of the money orders deposited to these two Quantum Information Technologies Regions bank accounts show that they were made payable to either Best 1 LLC or Quantum Information Technologies, both corporations set up by BARKER to aid him in his drug distribution operation.  A number of the money orders made payable to Best 1 LLC have BARKER'S USABOX.com account listed as the address and a number of the money orders made payable to Quantum Information Technologies have the BARKER residence listed as the address.  It should also be noted that a review of BARKER'S Endicia account confirmed that packages were sent to individuals who had made U.S. Postal Money orders payable to both companies (Quantum Information Technologies and Best 1 LLC) and that those money orders had in fact been deposited into the two Quantum Information Technologies accounts BARKER held at Regions Bank.  Furthermore,  payments made as a result of the sale of the controlled substances via credit card, were deposited into bank accounts belonging to Live Longer 110 LLC and Logo Wiz LLC, corporate entities, registered respectively to ADAMS and Jann BARKER, and set up for the sole purpose to receive payments from the drug distribution operation.

26. On March 28, 2016, investigators in the DEA Oakland California Resident Office intercepted two parcel packages containing thousands of dosage units of Tramadol.

The packages were both being shipped to a Glenn Mullin (MULLIN) at 157 Warren Drive, San Francisco, California.   Armed with this information, on March 29, 2016, investigators conducted a search warrant on MULLIN'S residence located at 157 Warren Drive.   As a result, investigators seized the following controlled substances from MULLIN'S bedroom,   Zolpidem Tartrate, Diazepam, Tramadol, Alprazolam (also known as "Xanax"), Clonazepam and Lorazepam, all Schedule IV controlled substances.   In addition to the controlled substances, investigators seized pre-printed postage labels that were from BARKER'S Endicia account.   It should be noted that all priority mail packages being prepared to ship to customers by MULLIN had been provided by BARKER'S Endicia account, which was clearly marked on the outside of the labels.   These labels were pre-printed and labeled with customers' names, with a return address of Best 1 LLC, 8369 NW 66 St #A3960, in Miami, Florida, (BARKER'S account at USABOX.Com), and with a COD return label for Quantum Information Technologies LLC, 2284 Ferndale Ave, Baton Rouge, Louisiana (BARKER's residence).

27.  MULLIN agreed to cooperate with the investigation and on March 29, 2016, met with investigators.   MULLIN was advised his rights per Miranda and waived his rights.    MULLIN advised that he began purchasing Xanax via the internet approximately one year ago, after which he was frequently contacted by a male known only to him as JACK.   JACK would call MULLIN frequently and pressure MULLIN into refilling his order.   MULLIN did so on a regular basis for a few months.   MULLIN advised that over a few months, JACK offered him money in return for accepting larger packages of pharmaceutical drugs, which included

controlled substances, to repackage for customers throughout the United States. MULLIN agreed, and shortly thereafter MULLIN was receiving packages from India from Waseem Akram (AKRAM), who MULLLIN believed to be JACK. MULLIN would receive directions from JACK, via email, and JACK provided pre-printed labels and customer orders that MULLIN packaged and mailed out. MULLIN advised he would receive approximately $500.00 a month for this service. MULLIN advised that beginning in September 2015, until March 2016, he was shipping on an average, 50 packages a month, all containing some form of pharmaceutical drugs, which included controlled substances such as Tramadol and Diazepam.

28. MULLIN advised that he had arranged for accounts to be established in his name at re-shipping locations throughout the United States in an effort to allow JACK's organization locations to ship packages into the United States from India. Investigators in fact had identified Mailbox Forwarding Inc., located at 2885 Sanford Ave, SW#36384, Grandville, Michigan as one of MULLIN's accounts.  MULLIN signed a consent to search for this account and all packages located in said account. On April 14, 2016, investigators seized 19 shipping boxes located in this account. The boxes identified AKRAM at No 143 Opp System Alloys, Nagawara, Bangalore, 560077, as the sender.  The boxes contained approximately 70,960 dosage units of pharmaceutical drugs: 3,390 Clonazepam (a Schedule IV controlled substance), 13,470 Diazepam (a Schedule IV controlled substance), 25,560 Zolpidem (a Schedule IV CDS) and 28,540 Tramadol (a Schedule IV controlled substance).

## BANK ACCOUNT ANALYSIS

29.  As set forth above, your Affiant believes that there is probable cause to believe that

BARKER, Jann Barker, ADAMS, and others conspired to commit money laundering

in violation of 18 U.S.C. § 1956(h).  From 2012 to the present, BARKER has formed

multiple corporations, which have no known purpose other than to conceal or

disguise the true nature of his illicit drug trafficking activities, and to assist in his

drug trafficking operation.  As set forth in further detail below, these entities include

Caring Partners 1, LLC; Don Western Sky, LLC; Best 1, LLC; EZF1, LLC;

Quantum Information Technologies, LLC, Healthy Life 1, LLC; and others.

Additionally, throughout this investigation, BARKER established, and continues to

establish, bank accounts in the names of the above entities at multiple financial

institutions, including: JP Morgan Chase, Capital One, Regions, Iberia Bank, and

most recently, TELCO Federal Credit Union.  Through our investigation and review

of bank records, we have learned that BARKER frequently changed bank accounts

he used to deposit drug proceeds from his illicit drug operation.  In addition, he

would change the corporation to which payments were made for no reason other

than to create confusion for banking officials and law enforcement, and to conceal

the nature and source of the drug proceeds derived from his money laundering

enterprise, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  A review of the bank

records we have thus far obtained, as well our investigation indicates that BARKER,

ADAMS, and Jann Barker are currently laundering drug proceeds using the

following accounts:

a.  Capital One Account – 2082550855; styled The Logo Wiz, LLC;

b.  Capital One Account - 2082551126; styled Quantum Information Technologies, LLC;

c.  Capital One Account – 5630301558; styled Jann Barker;

d.  Capital One Account – 5626378767; styled Donovan and Jann Barker;

e.  Capital One Account – 2082626967; styled Live Longer 110, LLC;

f.  Regions Bank Account – 141858751; styled Don Western Sky, LLC;

g.  Regions Bank Account – 141858948; styled Quantum Information Technologies, LLC;

h.  Regions Bank Account – 4302736926; styled Quantum Information Technologies, LLC;

i.  Baton Rouge TELCO Federal Credit Union Account – 1046189; styled QI Technologies, LLC;

30. Bank account analysis of BARKER, Jann Barker, and ADAMS' bank accounts revealed the following:

a)  Deposits to BARKER's Regions Bank account 141858948, styled Quantum Information Technologies, totaled more than $194,000 between June 2015 and January 2016. These deposits are comprised of approximately $134,000 from Postal Money Orders, and approximately $40,000 from individual's checks, MoneyGrams money orders, and/or Western Union money orders. These payments are believed by investigators to represent COD payments from customers who ordered illicit pharmaceutical drugs online. The CODs were made payable to BARKER's Quantum Information Technologies or Best 1 LLC, corporations. The COD payments made payable to Quantum

Information Technologies were addressed to and sent directly to BARKER's residence in Baton Rouge, LA.  The COD payments made to Best 1 LLC were sent to BARKER'S USABOX.com account in Miami, Florida, which were then forwarded to BARKER'S residence in Baton Rouge, Louisiana. Upon receipt, bank analysis confirmed that these COD payments were deposited by BARKER into his bank accounts in the name of Quantum Information Technologies at Regions Bank.   It is believed by investigators that nearly all of the funds received by Quantum Information Technologies are proceeds from his drug trafficking operation.

b)  A review of deposits to BARKER's Regions Bank account 141858751, styled Don Western Sky LLC, totaled $35,477 between June 2015, and February 2016.  Approximately $2,100 of these deposits was transferred to this account from BARKER's Regions Bank account 141858948, styled Quantum Information Technologies, which had been set up to receive COD payments from customers for their drug purchases.

c)  A review of deposits into BARKER's Regions Bank account 4302736926, styled Quantum Information Technologies, totaled approximately $157,000 between April 1, 2015 and May 29, 2015.   Deposits of money orders, believed by investigators to represent COD payments from customers who ordered Scheduled pharmaceutical drugs online, totaled approximately $16,000.  The COD payments were made payable to Quantum Information Technologies, and were addressed to, and sent directly to, BARKER's residence in Baton Rouge, Louisiana.  The COD payments made to Best 1

LLC were sent to BARKER'S USABOX.com account in Miami, Florida, and then forwarded to BARKER'S residence in Baton Rouge, Louisiana. Upon receipt, BARKER deposited the COD payments into this Regions Bank account in the name of Quantum Information Technologies. The analysis of this account to date has not been completed at this time. However, the analysis of Regions Bank account 141858948, also styled Quantum Information Technologies, has disclosed that $78,000 was transferred from Regions Bank account 141858948, styled Quantum Information Technologies, to Regions bank account 4302736923, styled Quantum Information Technologies, between June 2015 and January 2016. Based on the investigation to date, it is believed the funds transferred between accounts represent proceeds from drug trafficking. As previously stated, investigators believe that nearly all of the funds received by Quantum Information Technologies are proceeds from illegal drug trafficking.

d) A review of deposits into BARKER's Capital One account 2082551126, styled Quantum Information Technologies, totaled approximately $101,000 between July 2015 and February 2016. Deposits of money orders, believed by investigators to represent COD payments from customers who ordered Scheduled pharmaceutical drugs online, totaled approximately $79,000. As was done with Regions Bank accounts in the name of Quantum Information Technologies, the COD payments were made payable to Quantum Information Technologies, and were addressed to, and sent directly to, BARKER's residence in Baton Rouge, Louisiana. The COD payments made

to Best 1 LLC were sent to BARKER'S USABOX.com account in Miami, Florida, and then forwarded to BARKER'S residence in Baton Rouge, Louisiana. Upon receipt, BARKER deposited the COD payments into this Capital One Bank account in the name of Quantum Information Technologies.

e) A review of deposits made to Capital One account 5626378767, styled Donovan and Jann BARKER, totaled approximately $61,000 between February 2015 and March 2016. Approximately $6,525 of these deposits were transferred to this account from BARKER's Capital One Bank account 2082551126, styled Quantum Information Technologies, which had been set up to receive payments from customers purchasing pharmaceutical drugs through the internet.

f) A review of deposits made to Jann BARKER's Capital One account 2082550855, styled The Logo Wiz LLC, show total deposits of $192,741 between October 2015 and February 2016. During that time, deposits into this account from TSYS Merchant Solutions equaled $192,641. As stated previously, some of BARKER's customers that paid for illicit pharmaceutical drugs used their credit cards. Those credit card payments are processed by TSYS Merchant Solutions on behalf of The Logo Wiz LLC, a corporation set up by Jann Barker to receive payments from online pharmaceutical drugs sales. TSYS completes the transaction by depositing the payments it collects directly into The Logo Wiz LLC's Capital One Bank account. Based on the evidence gathered to date, investigators believe all deposits into The Logo

Wiz LLC bank account represent proceeds from online pharmaceutical drug sales.

g) A review of deposits made to Capital One Bank account 5630301558, styled Jann Barker, totaled $10,420 between December 2015 and March 2016. Of these deposits, $10,020 was transferred to this account from Capital One account 2082550855, styled The Logo Wiz LLC, the Capital One Bank account set up to receive credit card payments from customers who chose to pay with credit cards for their on line pharmaceutical drug purchases.

h) A review of deposits made to ADAMS' JP Morgan Chase Bank account 515791726, styled Live Longer 110 LLC, totaled approximately $1,008,000 between April 2015 and February 2016. During that time, deposits from TSYS Merchant Solutions totaled approximately $996,000. Just as with The Logo Wiz LLC, some customers pay for illicit pharmaceuticals via their credit card. Those credit card payments were processed by TSYS Merchant Solutions on behalf of Live Longer 110 LLC, a corporation set up by ADAMS to receive credit card payments for online pharmaceutical drug sales. It is believed by investigators that BARKER recruited ADAMS to create Live Longer 110 LLC and to establish a bank account to receive the credit card payments for illicit drugs after JP Morgan Chase Bank terminated its banking relationship with (Barker and) Quantum Information Technologies. Once TSYS processed the payments, it would send the payments directly to ADAMS' JP Morgan Chase Bank account in the name of Live Longer 110 LLC. Based on all of the evidence reviewed to date,

investigators believe all deposits into the Live Longer 110 LLC bank account represent proceeds from on line pharmaceutical drug purchases. This investigation disclosed ADAMS closed this JP Morgan Chase Bank account 515791726, styled Live Longer 110 LLC on or about April 25, 2016. This investigation further disclosed ADAMS established a Capital One Bank account 2082626967, styled Live Longer 110 LLC sometime prior to April 25, 2016. Research of databases revealed ADAMS withdrew more than $16,000 from his Live Longer 110 LLC, JP Morgan Chase Bank account 515791726 on or about April 15, 2016. Further database research revealed ADAMS deposited approximately $34,500 into his Live Longer 110 LLC, Capital One Bank account 2082626967 on or about April 18, 2016. Investigators believe ADAMS moved his Live Longer 110 LLC bank account from JP Morgan Chase Bank to Capital One Bank for no other reason than to avoid suspicion by banking officials and to avoid detection by law enforcement. Investigators believe the funds transferred to Capital One Bank account 2082626967, styled Live Longer 110 LLC, represent proceeds from drug trafficking. Additionally, investigators believe ADAMS is continuing to launder illicit funds using Capital One Bank account 2082626967, styled Live Longer 110 LLC.

i) On April 22, 2016, BARKER opened a Baton Rouge TELCO Federal Credit Union account 1046189, styled QI Technologies. The account was opened with an initial deposit of $2,980. This deposit consisted of $2,000 in cash, four money orders payable to Quantum Information Technologies totaling

$790, and one personal check payable to Quantum Information Technologies in the amount of $190. The bank account analysis to date has not disclosed any legitimate source of payments to any Quantum Information Technologies' accounts that your Affiant has reviewed. Investigators believe this account, as with all of the other Quantum Investment Technologies' accounts was established for the sole purpose of aiding in receiving laundering drug proceeds.

31. An analysis of BARKER's known business bank accounts to date has disclosed deposits of approximately $3,000,000 in drug proceeds from 2013 to the present. Our analysis indicates that nearly all of the deposits into these various bank accounts appear to be proceeds from his illicit pharmaceutical online drug trafficking operation. These payments are deposited in a variety of methods; including third-party check deposits, automatic credits (ACH), money order deposits, and transfers between BARKER's various corporations. Our review of bank records indicates that within days after BARKER receives, or personally deposits the drug proceeds into his bank accounts, he sends payments via outgoing wire transfers to individuals believed by investigators to be members of the illicit drug distribution network, both domestic and foreign, thereby promoting the specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Additionally, a review of BARKER's personal bank accounts indicates that he also transfers some of the drug proceeds to his personal bank accounts, which he then uses to pay some of his personal bills and expenses. Likewise, our review of deposits of drug payments into ADAMS' Live Longer 110 LLC bank account shows deposits of more than $1,000,000 to date. Our

review of ADAMS' bank records indicates that ADAMS, after receiving drug proceeds via ACH deposits from TSYS Merchant Solutions, frequently sends payments via outgoing wire transfers to many of the same recipients as BARKER who are believed by investigators to be members of the illicit drug distribution network.

32. During the investigation, the Louisiana state tax returns of BARKER, Jann BARKER, and ADAMS we obtained via Grand Jury subpoena from the Louisiana Department of Revenue disclose that BARKER and Jann Barker jointly filed a 2012 Louisiana state tax return, which reported only $144,082 in adjusted gross income. No state tax returns were provided for BARKER or Jann Barker by the state for subsequent years.    The Louisiana Department of Revenue records disclosed ADAMS filed state returns for 2013 and 2014, reporting $2,990 and $4,594 in adjusted gross income for the respective tax years.

## ACCOUNTS TO BE SEIZED

33. Based on the evidence obtained and analyzed to date, your Affiant has reason to believe BARKER, Jann Barker, and ADAMS maintain bank accounts, both personal and in the names of various corporations, at Capital One Bank, Regions Bank, and TELCO Federal Credit Union, which are used to accept payment for online pharmaceutical drug purchases and to promote money laundering.    During the investigative period, BARKER has utilized bank accounts at JP Morgan Chase Bank, Capital One Bank, Regions Bank, Iberia Bank, and TELCO Federal Credit Union to facilitate and promote the laundering of more than $3,000,000.  ADAMS has used his Live Longer LLC bank accounts at JP Morgan Chase Bank and Capital

One Bank to facilitate and promote the laundering of more than $1,000,000. Furthermore, the analysis of the various bank accounts at the various financial institutions has disclosed that BARKER has transferred illicit drug trafficking proceeds between his business accounts and to his personal accounts. This analysis also reveals that Jann BARKER's Logo Wiz, LLC account at Capital One Bank transferred illicit drug trafficking proceeds from that account into her personal account at Capital One Bank.

34. All of the accounts belonging to BARKER, ADAMS, Jann Barker, or their business entities contain or have contained funds that have been traced directly or indirectly to proceeds of the online pharmaceutical drug trafficking operation they are involved in. Based on the information that has been established, investigators have traced proceeds of violations of 21 U.S.C. § 846 into each of BARKER's ADAMS' and Jann Barker's known bank accounts. Moreover, the accounts themselves (and the drug proceeds that pass through them) are, themselves, property involved in money laundering activity in violation of 18 U.S.C. § 1956. Specifically, the listed accounts have been used to promote the aforementioned specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or to conceal the source or nature of the aforementioned specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

35. Your affiant's experience leads him to believe that probable cause exists to seize these bank accounts pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), and that a seizure warrant should be issued for the following:

a) Capital One Bank Account – 2082550855; Styled The Logo Wiz LLC, or Jann Barker

b) Capital One Bank Account – 2082551126; Styled Quantum Information Technologies, or Donovan Barker

c) Capital One Bank Account – 5630301558; styled Jann Barker

d) Capital One Bank Account – 5626378767; styled Donovan and Jann Barker

e) Capital One Bank Account – 2082626967; styled Live Longer 110 LLC, or Malcolm Adams

f) Regions Bank Account – 141858751; Styled Don Western Sky, LLC or Donovan Barker

g) Regions Bank Account – 141858948; Styled Quantum Information Technologies, or Donovan Barker

h) Regions Bank Account – 4302736926; Styled Quantum Information Technologies, or Donovan Barker

i) Baton Rouge TELCO Federal Credit Union Account – 1046189; styled QI Technologies, LLC, or Donovan Barker

## CONCLUSION

36. Based on the foregoing information, your Affiant believes that probable cause exists for the seizure of the funds held in Capital One Bank Account 2082550855; Capital One Bank Account 2082551126; Capital One Bank Account 5630301558; Capital One Bank Account 5626378767; Capital One Bank Account 2082626967;; Regions Bank Account 141858751; Regions Bank Account 141858948; Regions

Bank Account 4302736926; and Baton Rouge TELCO Federal Credit Union Account 1046189 as "proceeds" of drug trafficking, pursuant to 21 U.S.C. § 853, and as monies furnished or intended to be furnished by any person in exchange for a controlled substance, pursuant to 21 U.S.C. § 881(a)(6).

37. Your Affiant further believes that all of the funds in the above stated accounts should be forfeited as property "involved in" money laundering pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

38. Your Affiant would respectfully request that the funds be seized and held in the various accounts by Regions Bank, Capital One Bank and Baton Rouge TELCO Federal Credit Union until the forfeiture proceedings have been concluded, and upon further orders from this Court.

39. Your Affiant submits that a seizure warrant pursuant to 18 U.S.C. § 853(f) is appropriate in this instance because of the inherent fungibility and transferability of money in a bank account such that a restraining order would not be adequate. *United States v. Swenson, 2013 WL 3322632 (D. Idaho, July 1, 2013); United States v. Wiese*, 2012 WL 43369, *2 (E.D. Mich. January 9, 2012). The United States further urges seizure pursuant to 18 U.S.C. § 981(b).

Andre P. Guilott, Special Agent
Internal Revenue Service

SWORN TO AND SUBSCRIBED before me on May 20, 2016.

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>REGIONS BANK ACCOUNT – 141858751;<br>STYLED DON WESTERN SKY, LLC OR DONOVAN<br>BARKER; REGIONS BANK ACCOUNT –<br>141858948; STYLED QUANTUM<br>INFORMATION TECHNOLOGIES, OR DONOVAN<br>BARKER; AND REGIONS BANK ACCOUNT –<br>4302736926; STYLED QUANTUM<br>INFORMATION TECHNOLOGIES, OR DONOVAN<br>BARKER | )<br>)<br>)<br>)<br>)<br>) Case No. 16mj-45<br>)<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer:

An application by a federal law enforcement agent requests that certain property be seized as being subject to forfeiture to the Unit States of America, and held by representatives of Regions Bank, on behalf of the United States, until further order of this Court. Regions Ba IS HEREBY COMMANDED to seize the contents of the above-referenced accounts and to refuse the withdrawal of any amount from sa accounts by anyone until further order of this Court, promptly provide officers or contractors with the current account balance, and continue accrue any deposits, interest, dividends, and any other amount credited to said account until further order of this Court.

The property is described as follows:

REGIONS BANK ACCOUNT – 141858751; STYLED DON WESTERN SKY, LLC OR DONOVAN BARKER; REGIONS BANK ACCOUNT – 141858948; STYLED QUANTUM INFORMATION TECHNOLOGIES, OR DONOVAN BARKER; AND REGIONS BANK ACCOUNT – 4302736926; STYLED QUANTUM INFORMATIC TECHNOLOGIES, OR DONOVAN PARKER.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.  I further find that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure availability of the property for forfeiture such that seizure is authorized under 21 U.S.C. § 853(f).

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before     June 3, 2016
*(not to exceed 14 days)*

☑   in the daytime 6:00 a.m. to 10:00 p.m.          at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person fror whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to

Erin Wilder-Doomes                              .
*(United States Magistrate Judge)*

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐   for _____ days (not to exceed 30)          until, the facts justifying, the later specific date of _____.

Date and time issued:          May 20, 2016          _Erin Wilder-Doomes_
                                                        *Judge's signature*

City and state:          Baton Rouge, Louisiana          Erin Wilder-Doomes, United States Magistrate Judge
                                                        *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*